UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMIEN LAMAR TAYLOR,

Petitioner,

Case No. 1:02-CV-470

v.

HON. ROBERT HOLMES BELL

JOHN PRELESNIK,

Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has

filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

## I.    Background

Petitioner's convictions arose from an unsuccessful effort to rob a crack house, which

resulted in the fatal shooting of one victim and serious injuries to two other victims. The Michigan

Court of Appeals summarized the underlying facts as follows:

> Defendant's convictions arise from an alleged unsuccessful effort to rob a
> crack house. The incident led to the fatal shooting of one man, Timothy Horton, a
> crack cocaine dealer, and permanent injuries to two other victims, Al Bailey, another
> crack cocaine dealer, and Shatuan Smith, who was in the house to purchase crack
> cocaine. Defendant allegedly participated in the robbery attempt with three others,
> Tyrone Williams, Dontay McMann, and Clyde Wilson. Wilson, who allegedly
> participated as a "getaway" driver, testified for the prosecution pursuant to a plea
> agreement. Two teenage girls, Selma Mardella Davis and Chandra Keenan, both of
> whom were allegedly involved in the planning of the robbery, also testified for the
> prosecution pursuant to plea agreements. Davis, Keenan, and their friend, Whonita
> McGruther, were all present during the attempted robbery.

*People v. Taylor*, No. 210567 (Mich. App. Aug. 11, 2000), slip op. at 1.  *See* docket no. 31.

A jury convicted petitioner of: first degree murder, M.C.L. § 750.316(1)(b); conspiracy to commit assault with intent to commit armed robbery, M.C.L. §§ 750.157a, 750.89; two counts of assault with intent to do great bodily harm less than murder, M.C.L. § 750.84; and three counts of possession of a firearm during the commission of a felony, M.C.L. § 750.227b. Trial Transcript VII at pp. 3-5; Verdict Form (docket no. 60-7); *People v. Taylor*, No. 210567, slip op. at 1.[1] Petitioner was sentenced to concurrent prison terms of life without parole for the first-degree murder conviction, 20 to 75 years for the conspiracy conviction, and 6 to 10 years for the assault convictions, to be served consecutive to three concurrent two-year terms for the felony firearm convictions. Sent. Trans. at pp. 10-12 (docket no. 30); Judgment of Sentence (March 10, 1998) (docket no. 60-8); Opinion and Order (April 28, 1999) (docket no. 60-17).

Petitioner, through his counsel, appealed his convictions to the Michigan Court of Appeals raising the following issues:

I.     There was insufficient evidence to convict [petitioner] of conspiracy to commit armed robbery, where there was no evidence of an agreement by [petitioner]; and, there were, in fact, affirmative statements by the alleged co-conspirators that [petitioner] did not participate in any agreement.

II.    Where a rational trier of fact could not have found that the element of intent was proven beyond a reasonable doubt, i.e., that [petitioner] intended to kill Timothy Horton, or to inflict serious bodily injury, or that he acted in wanton or willful disregard that the natural tendency of his behavior was to cause death or great bodily harm, the conviction for felony murder must be vacated for insufficient evidence.

III.   The convictions of assault with intent to do great bodily harm less than murder cannot stand, where there was insufficient evidence that [petitioner] specifically intended to cause great bodily harm to Al Bailey and Shatoun

_____

[1] The court notes that petitioner's judgment of sentence erroneously stated that he was convicted of conspiracy to commit armed robbery, M.C.L. § 750.529 rather than the lesser included offense of conspiracy to commit assault with intent to commit armed robbery, M.C.L. § 750.89. *See* discussion, *infra*.

Smith, and where, accordingly there was insufficient proof of the crime of assault with intent to do great bodily harm.

IV.   Two counts of felony firearm should be dismissed with prejudice.

V.   Where the court's scheduling of jury deliberations suggested that a verdict could be reached in a short time, and where the judge resisted the jury's request for transcripts of testimony, there was an impingement of [petitioner's] right to have his case fully deliberated by the jury, without restraint and coercion.

The Michigan Court of Appeals affirmed the conviction. *People v. Taylor*, No. 210567.

Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court, identifying the following issue as raised in his Court of Appeals brief:

I.   Where a rational trier of fact could not have found that the element of intent was proven beyond a reasonable doubt, i.e., that [petitioner] intended to kill Timothy Horton or to inflict serious bodily injury, or that he acted in wanton or willful disregard that the natural tendency of his behavior was to cause death or great bodily harm, the conviction for felony murder must be vacated for insufficient evidence.

*People v. Taylor*, No. 117808 (Mich.) (Delayed application for leave to appeal at p. 2) (docket no. 32).  Petitioner also raised the following matters which he designated as "New Issues":

I.   There was insufficient evidence to convict [petitioner] of conspiracy to commit assault with intent to commit armed robbery, where there was no evidence of the specific intent to rob on behalf of [petitioner] and there were corroborating statements by co-conspirators that [petitioner] did not participate in any agreement to armed [robbery].  The prosecutor violated [petitioner's] 14th Amendment right to due process. [An] inference was impermissibly built on an inference.

II.   [Petitioner's] right to due process and a fair trial were violated U.S. Const., AM V, XIV, Const 1963, Art. 1, § 17.  When he was convicted of an offense he had no preliminary examination to, had no notice that he would have to defend against when [sic] the Judge sua sponte instructed the jury on the offense of conspiracy to commit assault with intent to arm rob [sic] [which petitioner] was convicted of.  US Const, Ams VI, XIV; Const 1963, Ams VI, XIV; Const 1963, Art 1 & 20.

III.     [Petitioner] was denied his Sixth Amendment right when trial counsel was ineffective and made error serious, so serious, when counsel failed to object to judge's sua sponte instructions on the charge of conspiracy to commit assault with intent to commit armed robbery.

IV.     [Petitioner] was denied his Sixth Amendment right when appellate counsel was ineffective and procedurally defaulted [petitioner's] appeal process by raising issue on charge [petitioner] had not been convicted of (conspiracy to commit armed robbery) and did not raise issue on charge petitioner had been convicted of (conspiracy to commit assault with intent to commit armed robbery) and counsel failed to file issue on one of [petitioner's] three felony firearm convictions "over looking various issues" assuming there were only two felony firearm convictions.

V.     Double jeopardy - Multiple punishment.

*Id.* at pp. 6-8.   The Michigan Supreme Court denied petitioner's application for leave to appeal.

*People v. Taylor*, No. 117808 (March 27, 2001).

Taylor filed a petition for federal habeas review, claiming "[t]he state court's determination that sufficient evidence was presented to sustain petitioner's felony murder conviction was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." Petition at ¶14 (docket no. 1).  Petitioner claimed that there was insufficient evidence of a conspiracy;  that there was insufficient evidence of an armed robbery; that there was insufficient evidence to support a felony murder conviction; that he was convicted of assault with intent to commit armed robbery, not conspiracy to commit armed robbery; and that his attorney failed to raise the issue of the erroneous armed robbery conviction on appeal.  *See* Petition at pp. 7, 7a.

On July 12, 2005, the court found that petitioner presented a mixed petition, containing both exhausted and unexhausted claims.  *See* Memorandum Opinion and Order (docket no. 44).   The Court ordered that the unexhausted claims in the petition be dismissed without

prejudice, that petitioner be given 30 days to return to the state court to present his unexhausted claims, that this action be stayed until petitioner filed a motion to amend his petition setting forth his unexhausted claims, and that such motion shall be filed not later than 30 days after a final decision is rendered by the Michigan courts. *Id.*

Petitioner filed a motion for relief from judgment in the Muskegon County Circuit, which raised the following four issues:

I. Damien Taylor was deprived of his right to due process under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 where there was insufficient evidence to convict defendant Mr. Taylor of conspiracy to commit assault with intent to commit armed robbery, where there was no evidence of agreement or specific intent to armed rob [sic] as to the defendant and there were, in fact, affirmative statements by the alleged co-conspirators that defendant did not participate in any agreement.

II. Where a rational trier of fact could not have found it proven beyond a reasonable doubt, i.e., that defendant Damien Taylor caused the death of Timothy Horton, the conviction for felony murder must be vacated for insufficient evidence under the United States Constitution, 14th Amendment and Michigan Constitution 1963, Article 1, Section 17.

III. Defendant was deprived of his right under the Sixth and Fourteenth Amendments to the United States Constitution and under Sections 17 and 20, Michigan Constitution 1963; to due process, a fair trial and equal protection / application of the laws right [sic] to effective assistance of trial and appellate counsel.

IV. Damien Taylor was deprived of his <u>Due Process Rights under the 14th Amendment to the United States Constitution 1963, Section 17, Article 1</u>, where he was given no notice, or opportunity to defend against the charge of <u>Conspiracy to Assault With Intent to Commit Armed Robbery</u>.

*People v. Taylor*, No. 97-1-40488-FC (Muskegon Co. Cir. Ct.) (Motion for Relief From Judgment) (emphasis in original) (docket no. 60-4).

Issues I and II in petitioner's motion for relief from judgment essentially restated the insufficient evidence claims raised in the state appeal. Issue III raised a cryptic ineffective assistance of trial counsel claim with respect to trial counsel's failure to object to hearsay testimony from three witnesses (Selma M. Davis, Clyde Wilson and Chandra Keenan), the prosecutor's opening statement which "injected such hearsay into [d]efendant's trial;" and counsel's failure to interview a witness (Tyrone Williams). In Issue IV, petitioner states that his due process rights were violated because he did not have adequate notice of the charges against for the charge of conspiracy to commit assault with intent to commit armed robbery and that his appellate counsel failed to raise this due process issue.

The trial court addressed petitioner's motion as follows:

On September 15, 2005, defendant filed the instant "motion for relief from judgment" pursuant to MCR 6.500 et. seq. Defendant raises the following issues: (1) Defendant was denied due process in that there was insufficient evidence to convict defendant of conspiracy to commit assault with intent to commit armed robbery []. (2) There was insufficient evidence to convict defendant of felony murder. (3) Defendant was denied effective assistance of trial counsel because of trial counsel's failure to object as to issue #4, and failure to object hearsay statements when the alleged conspiracy was over, and failure to call certain witnesses for the defendant. Appellate counsel was ineffective for failing to raise issue #4 on appeal. (4) Defendant was erroneously convicted of conspiracy to commit assault with intent to commit armed robbery when in fact he was charged with conspiracy to commit armed robbery, and he had no notice of the charge with which he was convicted.

The Court **denies** defendant's request for appointment of counsel, an order requiring the prosecutor to respond, and an evidentiary hearing. As to issues no. 1 and 2, the Court **denies** defendant's motion pursuant to MCR 5.608(D)(2), as the Michigan Court of Appeals has already decided those issues against defendant. As to issue no. 3, defendant has failed to show good cause for failure to raise the issue of ineffective assistance of trial counsel in the previous appeal; thus, the motion is denied as to this issue pursuant to MCR 6.508(D)(a). Appellate counsel was not ineffective for failure to raise issue no. 4 on appeal because that issue has no merit. As to issue no. 4, the body of the information at to Count II clearly states a charge of conspiracy to commit armed robbery.

*People v. Taylor*, No. 97-1-40488-FC (Opinion and Order Sept. 22, 2005) (emphasis in original)

(docket no. 70).

In his delayed application for leave to appeal to the Michigan Court of Appeals, petitioner expanded the claims raised in his motion for relief from judgment by raising six issues (and numerous sub-issues) as follows:

I. The trial court clearly erred when it opinioned [sic] "the Michigan Court of Appeals has already decided Issue No. 1 against defendant" and denied defendant relief from judgment pursuant to MCR 6.508(D)(2).

II. The trial court clearly erred when it opinioned [sic] "the Michigan Court of Appeals has already decided Issue No. 2 against defendant" and denied defendant relief from judgment pursuant to MCR 6.508(D)(2).

III. The trial court clearly erred when it opinioned [sic] that "as to Issue No. 4, the body of the information as to Count II clearly states a charge of conspiracy to commit armed robbery," and denied defendant relief from judgment.

IV. Defendant was deprived of his right under the 6th and 14th Amendments to the United States Constitution and under §§ 17 and 20, Art. 1, Michigan Constitution 1963; to due process, a fair trial and equal protection/application of the laws rights to effective assistance of trial counsel when his trial counsel :

(1) failed to object to the judges instructions and the conviction of conspiracy to commit assault with intent to commit armed robbery;

(2) failed to object to the instructions on aiding and abetting felony murder and the guilty verdict for felony murder;

(3) failed to object to the submitting of a legally insufficient theory to the jury;

(4) failed to object to inadmissible hearsay testimony;

(5) failed to object to inadmissible hearsay comments of the prosecution;

   (6) failed to investigate alibi; and,

   (7) failed to object to the sentence of conspiracy to commit armed robbery.

 V.  Defendant was deprived of his right under the 6th and 14th Amendments to the United States Constitution and under §§ 17 and 20, Art. 1, Michigan Constitution 1963; to due process, a fair trial and equal protection/application of the laws rights to effective assistance of appellate counsel when his appellate counsel :

   (1) failed to raise on appeal of right the claim of ineffective assistance of trial counsel;

   (2) raised issue of charge defendant had not been convicted on;

   (3) denied defendant his appeal of right; and,

   (4) failure to raise viable issues.

 VI.  6.508(D)(3)(a) and (b) "Cause and Prejudice"

*People v. Taylor*, No. 273253 (Mich. App.) (Delayed Application for Leave to Appeal) (docket no. 70). The Michigan Court of Appeals denied the delayed application for leave to appeal because "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id.*(Order, May 3, 2007). Petitioner raised the same six issues in his delayed application for leave to appeal to the Michigan Supreme Court, which that court denied because "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Taylor*, No. 134289 (Mich.) (Order, October 27, 2007).

   On November 28, 2007, petitioner filed a motion in this court to amend his habeas petition. *See* Motion (docket no. 52). The court granted petitioner's motion and re-opened his habeas action on January 18, 2008. *See* Order (docket no. 58). The amended petition, which is now before the court, raised six issues for review:

I.      Where a rational trier of fact could not have found that the element of intent was proven beyond a reasonable doubt, i.e., that [petitioner] intended to kill Timothy Horton, or to inflict serious bodily injury, or that he acted in wanton or willful disregard that the natural tendency of his behavior was to cause death or great bodily harm, the conviction for felony murder must be vacated for insufficient evidence.

II.     [Petitioner] was deprived of his right to due process under the 14th Amendment to the United States Constitution under [§] 17, Article 1, Michigan Constitution 1963 where there was insufficient evidence to convict [petitioner] of conspiracy to commit assault with intent to commit armed robbery, where there was no evidence of agreement or specific intent to armed rob as to the [petitioner] and there were, in fact, affirmative statements by the alleged co-conspirators that [petitioner] did not participate in any agreement.

III.    Where a rational trier of fact could not have found it proven beyond a reasonable doubt, i.e., that [petitioner] caused the death of Timothy Horton, the conviction for felony murder must be vacated for insufficient evidence under the United States Constitution, 14th Amendment and Michigan Constitution 1963, Article 1, Section 17.

IV.     [Petitioner] was deprived of his right under the 6th and 14th Amendments to the United States Constitution and under §§ 17 and 20, Art. 1, Michigan Constitution 1963; to due process, a fair trial and equal protection/application of the laws rights to effective assistance of trial counsel when his trial counsel (1) failed to object to the [judge's] instructions and the conviction of conspiracy to commit assault with intent to commit armed robbery (2) failed to object to the instructions on aiding and abetting felony murder and the guilty verdict for felony murder (3) failed to object to the submitting of a legally insufficient theory to the jury (4)   failed to object to inadmissible hearsay testimony (5) failed to object to inadmissible hearsay comments of the prosecution (6) failed to investigate alibi (7) failed to object to the sentence of conspiracy to commit armed robbery (8) failed to object to the [prosecutor's] misconduct.

V.      [Petitioner] was deprived of his right under the 6th and 14th Amendments to the United States Constitution and under §§ 17 and 20, Art. 1, Michigan Constitution 1963; to due process, a fair trial and equal protection/application of the laws rights to effective assistance of appellate counsel when his appellate counsel (1) failed to raise on appeal of right the claim of ineffective assistance of trial counsel (2)

raised issues of charge [petitioner] had not been convicted on (3) denied [petitioner] his appeal of right (4) failed to raise viable issues.

VI.    [Petitioner] was deprived of his due process rights under the 14th Amendment to the United States Constitution and under the Michigan Constitution 1963, Section 17, Article 1, where he was given no notice, or opportunity to defend against the charge of conspiracy to assault with intent to commit armed robbery.

Amended Petition (docket no. 59) and Memorandum at pp. 26-33 (docket no. 60).

## II.    Procedurally defaulted claims

### A.    Procedural default doctrine

Respondent contends that some of petitioner's claims have been procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner first raised Issues IV, V and VI of his amended habeas petition in his motion for relief from judgment brought pursuant to MCR 6.500 *et seq.* Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.*

As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's issues IV and VI on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

However, petitioner's Issue V, which alleged ineffective assistance of appellate counsel, is not subject to procedural default. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004). Petitioner contends that appellate counsel was ineffective because he (1) failed to raise on appeal of right the claim of ineffective assistance of trial counsel; (2) "raised issues of charge [petitioner] had not been convicted on;" (3) denied

petitioner his appeal of right; and (4) failed to raise viable issues. However, the only claim of ineffective assistance of appellate counsel raised in petitioner's motion for relief from judgment in the trial court was that his appellate counsel failed to appeal the due process issue with respect to the conspiracy conviction. The trial judge rejected this claim, finding that petitioner had notice of this charge.

Petitioner's additional claims of ineffective assistance of appellate counsel, raised only in his applications to appeal to the Michigan Court of Appeals and Michigan Supreme Court, were not exhausted. Petitioner cannot raise these claims in another motion under MCR 6.500 *et seq.* Because petitioner has no further avenues to exhaust his additional claims of ineffective assistance of appellate counsel in the state courts, this results in a procedural default that bars federal habeas review of those additional claims. "In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). Accordingly, except for the claim that appellate counsel failed to raise a due process claim with respect to the conspiracy conviction, petitioner's claims of ineffective assistance of appellate counsel are procedurally defaulted.

### B. Cause and Prejudice as to petitioner's Issues IV, V and VI

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts

to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner does not assert any cause for his procedural default of these issues.[2] Petitioner's failure

to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do

so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v.*

*Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental

miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare"
> and would only be applied in the "extraordinary case," while at the same time
> ensuring that the exception would extend relief to those who were truly deserving,
> the Court explicitly tied the miscarriage of justice exception to the petitioner's
> innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that,

in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty

beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence'

means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,

623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support

his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at

trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such

evidence is unavailable in the vast majority of cases. *Id.* Petitioner offers no such new evidence

that he is actually innocent of the crimes for which he was convicted. He has failed to meet the

fundamental miscarriage of justice exception. Accordingly, petitioner's Issues IV, V and VI (with

---

[2] While petitioner raised an issue regarding ineffective assistance of appellate counsel, he did not
assert this as cause for the procedural default. In any event, this claim fails because there was no ineffective
assistance of appellate counsel. *See* discussion in § IV, *infra*.

the exception of claims for ineffective assistance of appellate counsel for failing to raise a due process argument with respect to the conspiracy conviction) are procedurally barred and not subject to habeas review.

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted the issues raised in his petition that are not procedurally barred.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. DISCUSSION

### A. Insufficient evidence claims

Petitioner raises two claims of insufficient evidence to support his convictions. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319

(emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

## 1. Sufficiency of the evidence for felony murder (Issues I and III).

Petitioner contends that there was insufficient evidence to support his conviction for felony murder of Timothy Horton. The Michigan Court of Appeals addressed this issue as follows:

> Defendant next claims that there was insufficient evidence of malice on his part to convict him of felony murder in connection with the shooting death of Timothy Horton. We disagree.

> The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery]. [*People v. Carines*, 460 Mich. 750, 758-759; 597 NW2d 130 (1999), quoting *People v. Turner*, 213 Mich.App 558, 566; 540 NW2d 728 (1995).]

Further,

> [t]he facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Id.* Malice may also be inferred from the use of a deadly weapon. [*Carines*, *supra*. Citations omitted.]

By engaging in an armed robbery with others, a defendant sets in motion a force likely to cause death or great bodily harm. *Id.* at 760. Even if the defendant did not personally use a deadly weapon, a jury may infer that he acted with malice if he participated in a robbery involving the use of deadly weapon and acted in wanton and wilful disregard of the possibility that death or great bodily harm would result. *Id.*

> The record demonstrates that defendant participated in the attempted robbery of a crack house with others who were known by him to be violent and dangerous and with knowledge that his co-conspirators were armed with deadly weapons. The evidence, viewed in a light most favorable to the prosecution, was sufficient to

enable the jury to conclude beyond a reasonable doubt that defendant participated in the offense with the requisite malice to support a conviction for felony murder. *Carines*, *supra*.

*People v. Taylor*, No. 210567, slip op. at pp. 1-3.

The Michigan Court of Appeals applied the correct legal standard in resolving this claim. In both the appellate briefs and in the response to petitioner's habeas petition, the government has pointed out trial testimony in support of this conviction. Selma Davis testified that she hooked up Tyrone Williams ("Man Man") and Dontay McMann for the purpose of robbing the Detroit boys (identified as Shorty and Face) who were in Muskegon to sell drugs. Trial Trans. III at pp. 52-55. Derrick Porter testified that he lived at 1021 Kenneth (sometimes referred to as the drug house), and that the victim, Timothy Horton ("Shorty) and Al Bailey ("Face") were staying with him at that address on the on the day of the murder. Trial Trans. II at pp. 62-63. At that time, Shorty and Face were selling drugs, including cocaine. *Id.* Shorty called Selma at her home on March 1, 1997. Trial Trans. III at pp. 56-58. Selma told McMann, who paged Williams. *Id.* at pp. 56-58. Williams came over to Selma's. *Id.* at p. 58. Selma Davis testified that in her presence, Williams told McMann that petitioner was "with him" and when McMann asked if Williams had his "heat" (weapons) for the robbery, Williams said "Just don't worry about that." *Id.* at pp. 58-59. Selma and her friends Whonita McGruther and Chandra Keenan took a cab over to 1021 Kenneth. *Id.* at pp. 56-61.

Clyde Wilson testified that while at petitioner's home, Williams asked Wilson to be the wheel man for the robbery. Trial Trans. IV at pp. 119. Petitioner was in the getaway car with Clyde Wilson and, according to Wilson, was seen by him immediately before and after the robbery and murder at the drug house. Trial Trans. IV at pp. 180, 185-86, 219-220. Petitioner was seated in the car with Wilson, Williams and McMann, and Williams pointed out where to park. *Id.* at pp.

180-82, 185, 219-220.  They drove by the house three times until Selma made a hand motion to come in.  *Id.* at pp. 125, 128-29, 182.  As they drove by the house, petitioner did not ask questions and did not seem confused. *Id.* at pp. 219-20.  Williams took an AK-47 out of the trunk, loaded it with a "banana" clip, and went with petitioner and Dontay McMann in the direction of 1021 Kenneth, the house where the robbery and murder occurred.  Trial Trans. IV at pp. 131-33. Petitioner did not seem shocked or ask about the AK 47.  *Id.* at pp. 219-20.

Witnesses in or in front of the drug house testified: that three men wearing dark clothing and masks approached the house; that they were armed; that one with an assault rifle with a banana clip; and that they kicked the door open, ran through the house and fired shots inside.  Trial Trans. II at pp. 303-06, 311 (Tony Northington), Tr. Vol. II, pp 303-306, 311-314; Trial Trans. II at pp. 161-71 (Shataun Smith);  Trial Trans. II at p. 267 (DeShawn Martin); Trial Trans. II at pp. 282-84 (Charles Clark); Trial Trans. II at pp. 200-12 (Lavese Potts); Trial Trans. II at pp. 234-41 (Christie Hall).

Petitioner was seen running from the scene of the robbery and murder by other acknowledged co-conspirators who testified that he ran to the getaway car, wearing a black leather coat, and jumped in the car window carrying a mask and a gun.  Trial Trans. III at p. 79 (Selma Davis); Trial Trans. V (Feb. 18, 1998) at pp. 84-86[3] (Whonita McGruther); Trial Trans. V (Feb. 18, 1998) at pp. 258-64 (Chandra Keenan).

Selma Davis testified that petitioner was at her house after the robbery, at which time he placed a silver gun on a stool in her bedroom.  Trial Trans. III at p. 92.   At that time, petitioner told another co-conspirator, Tyrone Williams, that he had "never seen a fat dude run so fast."  Trial

---

[3] The court notes that there are two transcripts designated as Trial Trans. V, one for Wednesday February 18, 1998 (docket no. 26) and one for Thursday, February 19, 1998 (docket no. 27).

Trans. III at p. 181-82. Petitioner's statement was in apparent reference to "Face," one of the drug dealers who was overweight. Trial Trans. III at pp. 49-51, 53, 57-58, 182. Petitioner also asked Williams why he shot the fat guy, to which the reply was he "wouldn't give it up." Trial Trans. IV at pp. 144-48. Al Bailey (Face) testified that he and his friend Tim (Shorty) came to Muskegon to sell cocaine, and that he (Bailey) was shot on March 1, 1997. Trial Trans. V (Feb. 18, 1998) at pp. 196-99, 202, 205-06. Finally, the jacket seized from petitioner's home by the police was consistent with the jacket eyewitnesses Paul Galdeen and Lisa Miszewski saw worn by an individual at the scene firing a handgun, i.e., a long, knee-length, black leather jacket. Trial Trans. II at pp. 141, 146; Trial Trans. III at pp. 8-9; Trial Trans. IV at p. 269; Trial Trans. V (Feb. 19, 1998) at pp. 113-15, 158-59.

Viewing this evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of felony murder beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### 2. Sufficiency of the evidence for conspiracy (Issue II)

Petitioner also claims that there was insufficient evidence to support his conspiracy conviction. The Michigan Court of Appeals reviewed petitioner's conspiracy conviction as one for conspiracy to commit armed robbery, MCL § 750.529, and found sufficient evidence of that crime to affirm the conviction:

Defendant first claims that the evidence was insufficient to support his conviction for conspiracy. We disagree. A conspiracy is a "partnership in criminal purposes." *People v. Atley*, 392 Mich. 298, 310; 220 NW2d 465 (1974), quoting

*United States v. Kissel*, 218 U.S. 601, 608; 31 S Ct 125; 54 L Ed 1168 (1910). "Under such a partnership, two or more individuals must have voluntarily agreed to effectuate the commission of a criminal offense." *People v. Justice (After Remand)*, 454 Mich. 334, 345; 562 NW2d 652 (1997); *see also People v. Blume*, 443 Mich. 476, 485; 505 NW2d 843 (1993). "The gist of the offense of conspiracy lies in the unlawful agreement." *Atley*, *supra* at 311.

> A conspirator need not participate in all the objects of the conspiracy. In general, each conspirator is held criminally responsible for the acts of his associates committed in furtherance of the common design, and, in the eyes of the law, the acts of one or more are the acts of all the conspirators. [ *People v. Grant*, 455 Mich. 221, 236; 565 NW2d 389 (1997). Citations and footnote omitted.]

Direct proof of a conspiracy is not essential. Proof of a conspiracy may be derived from the circumstances, acts and conduct of the parties. *Justice*, *supra* at 347. "Inferences may be made because such evidence sheds light on the co-conspirators' intentions ." *Id.*

Initially, we find no merit to defendant's claim that the evidence was insufficient to establish a conspiracy because the principal witnesses against him testified pursuant to plea agreements and, accordingly, were not believable. The credibility of witnesses is a matter for the trier of fact to resolve. *People v. Daoust*, 228 Mich.App 1, 17; 577 NW2d 179 (1998). The jury was free to believe the prosecution's witnesses and disbelieve defendant.

Defendant also claims that the evidence was insufficient to show that he was part of any conspiracy because two of the co-conspirators, Davis and Wilson, testified that they did not know defendant was going to be involved, and that Williams and McMann both failed to mention defendant's name when talking about the attempted robbery. Defendant contends that he was "merely present" at the time of the offense, which is insufficient to establish a conspiracy.

The fact that Davis and Wilson were not privy to defendant's involvement prior to the event does not defeat a conviction for conspiracy, which only requires agreement with one other person. *Justice*, *supra* at 345. Here, evidence was presented that Williams had recruited defendant to participate in the planned robbery and that defendant conspired with Williams to participate in the crime. Moreover, a third witness testified that Davis did mention defendant's name in connection with the plan. Furthermore, the evidence established more than defendant's mere presence at the scene. Wilson, who drove to the crack house, testified that defendant was in the car with Williams and McMann upon arriving at the house, and that, after Williams retrieved an assault weapon from the trunk, defendant went with Williams and McMann toward the house. As they were standing in the driveway, Timothy

Horton told Davis, Keenan, and McGruther that he saw three men by the side of the house who were probably going to rob him. The girls saw a man with an assault weapon approach Horton. Other witnesses saw two men approach the front door, shoot it open and run inside, shooting. Shatuan Smith, who was shot inside the house, saw two men run past her and out the back door, shooting at and chasing Al Bailey. Witnesses saw Bailey run into a house on Apple Avenue and saw two men running after him. The two men shot into the house as Bailey ran inside. Defendant was next seen running in the street, away from the two houses where the shots were fired. Wilson, Davis, Keenan, and McGruther testified that defendant jumped into the car in which they were riding as they were fleeing the scene. Several witnesses testified that they saw defendant with a .32 revolver. Spent casings for a .32 were found in the crack house.

Viewed most favorably to the prosecution, the evidence was sufficient to enable the jury to find, as it did, that defendant was guilty of conspiring to rob the crack house.

*People v. Taylor*, No. 210567, slip op. at pp. 1-3.

The Michigan Court of Appeals applied the correct legal standard in concluding that sufficient evidence existed to support a conviction for conspiracy to commit armed robbery under M.C.L. § 750.529. The facts set forth in § IV.A.1, *supra*, provide sufficient evidence to support petitioner's conviction for conspiracy to commit armed robbery. Viewing this evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of conspiracy to commit armed robbery beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

A related issue (which the government does not address), is petitioner's contention that although he was charged with conspiracy to commit armed robbery, M.C.L. § 750.529, he was actually convicted of conspiracy to assault with intent to rob while armed, M.C.L. § 750.89.[4] In his

---

[4] M.C.L. § 750.529 (armed robbery) provides as follows:

A person who engages in conduct proscribed under section 530 [i.e., robbery, as defined in MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is

motion for relief from judgment, petitioner claimed a violation of his due process rights because he was not put on notice of the crime of conspiracy to commit assault with intent to commit armed robbery. As previously discussed, this due process claim has been procedurally defaulted and is not subject to federal habeas review.

Even if the court addressed the merits of this claim, there would be no federal due process violation. On review, the Michigan Court of Appeals found that sufficient evidence existed to support petitioner's conviction for conspiracy to commit armed robbery (i.e., the conviction reflected on Muskegon County's Judgment of Sentence). As previously discussed, the jury convicted petitioner of the necessarily lesser included offense of conspiracy to assault with intent to rob while armed. *See People v. Akins*, 259 Mich. App. 545, 552, 675 N.W.2d 863 (2003); *People v. Johnson*, 90 Mich. App. 415, 420-21; 282 N.W.2d 340 (1979). In raising a due process issue, petitioner was apparently relying on the rule that "a defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment and the defendant did not have notice that she might be charged with that offense." *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000), citing *Schmuck v. United States*, 489 U.S. 705, 717-18 (1989). However, the rule expressed in *Seymour* does not apply in this case. Petitioner had notice of the charge of assault with intent to rob while armed because it was a necessarily lesser included offense of the original charge of armed robbery. The trial court instructed the jury on this necessarily lesser included offense and the jury

---

inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

M.C.L. § 750.89 (assault with intent to rob while armed) provides as follows:

Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

convicted petitioner of that lesser crime. A trial court's instruction was proper "because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge." *Seymour*, 224 F.3d at 558. Furthermore, since the government supplied sufficient evidence to convict petitioner of conspiracy to commit armed robbery, there was, by definition, sufficient evidence to convict petitioner of the necessarily lesser included offense of conspiracy to commit assault with intent to rob while armed.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.[5]

## B. Ineffective assistance of appellate counsel

Petitioner's remaining claim is for ineffective assistance of appellate counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is

_____

[5] A separate issue, which was not raised in either the state court or this habeas action, exists with respect to an apparent error in Muskegon County's judgment of sentence, which states that petitioner was convicted of conspiracy to commit armed robbery, M.C.L. § 750.529, rather than conspiracy to assault with intent to rob while armed, M.C.L. § 750.89. While an apparent error exists in the state court's judgment of sentence, petitioner has never sought to reform or correct this error.

whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis*, 351 F.3d at 745, *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986).

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it

24

amounted to ineffective assistance of appellate counsel." *Id.* at 700. In this regard, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). "Furthermore, the *Strickland* analysis 'does not require an attorney to raise every non-frivolous issue on appeal.'" *Shaneberger*, 615 F.3d at 452, quoting *Caver v. Straub*, 349 F.3d 340, 348-49 (6th Cir.2003).

As previously discussed, petitioner's only remaining claim of ineffective assistance of appellate counsel was that counsel failed to appeal the due process issue with respect to the conspiracy conviction. Appellate counsel, upon reviewing the record and consulting with petitioner, should have questioned the discrepancy between the jury instructions, the jury verdict form and the judgment of sentence. Petitioner states that he attempted to file a supplemental brief on the due process issue, but that it was rejected by the Michigan Court of Appeals. Assuming that counsel was deficient in failing to catch the error in the judgment of sentence, counsel's action did not prejudice petitioner. As previously discussed, petitioner's due process rights were not violated when the trial judge instructed the jury on a necessarily lesser included offense rather than the greater offense. Furthermore, sufficient evidence supported the conviction on either the greater and lesser included offense. Accordingly, petitioner's claim for ineffective assistance of appellate counsel should be denied.

## V.     RECOMMENDATION

For these reasons, I respectfully recommend that petitioner's habeas petition be

**DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  February 8, 2011                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).